CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 1 9 2021

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | |
|---|---|
| **MARK S.,** | ) |
| | ) |
| **Plaintiff** | ) **Civil Action No. 7:19-CV-740** |
| | ) |
| **v.** | ) |
| | ) |
| **ANDREW SAUL, Commissioner of** | ) |
| **Social Security,** | ) **By: Michael F. Urbanski** |
| | ) **Chief United States District Judge** |
| | ) |
| **Defendant** | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation ("R&R") on December 24, 2020, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Mark S. ("Mark") has filed objections to the report and this matter is now ripe for the court's consideration.

### I. Background

Mark filed an application for supplemental security income on July 7, 2017, alleging disability beginning on April 25, 2013. He was 48 years old at the time he filed his application. He alleged disability based on a seizure disorder, retinal detachment in his left eye resulting in no vision in that eye, decreased vision in his right eye, and low back pain. The administrative law judge ("ALJ") found that his impairments were severe but that none of them met or

equaled a listed impairment. The ALJ further found that Mark can perform medium work

except that he can only occasionally climb ramps and stairs, balance, kneel, stoop, and crouch,

and never crawl; should avoid concentrated exposure to extremely hot temperatures; avoid all

exposures to hazardous machinery; avoid working at unprotected heights, climbing ladders,

ropes, or scaffolds, and avoid working on vibrating surfaces. He was further limited to jobs

requiring no more than monocular vision and that had no required use of a computer monitor

for more than two hours per day.  In addition, he could not work at a job where driving was

required. The ALJ found that Mark could not return to his past relevant work as an electrician

but could do other work in the economy. Thus, the ALJ found him not disabled. The Appeals

Council denied Mark's request for review, making the ALJ decision the final decision of the

Commissioner.

This lawsuit followed. The magistrate judge found that the ALJ determination was

supported by substantial evidence and Mark has objected to several of the magistrate judge's

findings.

## II. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil

Procedure[1] is designed to "train[ ] the attention of both the district court and the court of

appeals upon only those issues that remain in dispute after the magistrate judge has made

findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007)

(citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with

---

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

sufficient specificity so as reasonably to alert the district court of the true ground for the

objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We
> would be permitting a party to appeal any issue that was before the magistrate
> judge, regardless of the nature and scope of objections made to the magistrate
> judge's report. Either the district court would then have to review every issue in
> the magistrate judge's proposed findings and recommendations or courts of
> appeals would be required to review issues that the district court never
> considered. In either case, judicial resources would be wasted and the district
> court's effectiveness based on help from magistrate judges would be
> undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report

and recommendation to which a proper objection has been made. "The district court may

accept, reject, or modify the recommended disposition; receive further evidence; or return the

matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. §

636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the

court to a specific error in the magistrate judge's proposed findings and recommendations,'"

de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014

WL 1669806, at *1 (W.D.N.C. 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987

F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)).

"The court will not consider those objections by the plaintiff that are merely conclusory or

attempt to object to the entirety of the Report, without focusing the court's attention on

specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at

*2 (E.D. Va. 2009), aff'd, 373 F. App'x 346 (4th Cir.); see Midgette, 478 F.3d at 621 ("Section

3

636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions of the report or specified proposed findings or recommendations to which objection is made.'") (emphasis in original). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## III. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## IV. Plaintiff's Objections[2]

Mark makes the following objections to the magistrate judge's R&R: (1) The magistrate judge erred when he concluded that substantial evidence supported the ALJ's determination that Mark can do medium work with additional limitations; and (2) The magistrate judge erred when he concluded that the ALJ properly assessed Mark's subjective allegations of impairment.

### A. Residual Functional Capacity Assessment

Mark objects that the magistrate judge erred in finding that the ALJ's determination that he has the RFC to do medium work with additional limitations is supported by substantial evidence and also that the magistrate judge erred in finding that the ALJ conducted a proper function-by-function analysis of how his impairments limit his ability to work. He claims that the ALJ ignored significant evidence in the record that supported his limitations with balancing and difficulty reaching and grasping, and also failed to make specific findings regarding whether his impairments would cause him to experience episodes of fatigue necessitating breaks and how often the breaks would need to occur. Mark also argues that the ALJ failed to include the proper narrative discussion called for by SSR 96-8p and that her decision does not contain sufficient information to allow meaningful review.

The process for assessing a claimant's RFC is set forth in SSR 96-8P, 1996 WL 374184 (S.S.A.). The ruling sets out in relevant part the following:

The RFC must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis,

---

[2] Detailed facts about Mark's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 20) and in the administrative transcript (ECF No. 8-1) and will not be repeated here.

> including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and
> 416.945. Only after that may the RFC be expressed in terms of the exertional
> levels of work, sedentary, light, medium, heavy, and very heavy.

Id. at *1. Physical abilities set out in 20 C.F.R. 404.1545(b) and 416.945(b) include sitting,

standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and

crouching. Mental abilities set out in paragraph (c) of the regulation include understanding,

remembering, and carrying out instructions, and responding appropriately to supervision, co-

workers, and work pressures in a work setting. Other abilities set out in paragraph (d) of the

regulation include those affected by skin impairments or epilepsy, impairment of vision,

hearing, or other senses, or impairments which impose environmental restrictions.

The magistrate judge noted that in Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015),

the Fourth Circuit rejected a per se rule requiring remand when the ALJ did not perform an

explicit function-by-function analysis. The Mascio court found that remand may be

appropriate when an ALJ fails to assess a claimant's capacity to perform relevant functions,

despite contradictory evidence in the record, or where the ALJ's analysis otherwise frustrates

meaningful review.

The magistrate judge determined that Mark's argument regarding the function-by-

function analysis amounted to disagreements with the ALJ decision and that he was asking the

court to reweigh the evidence, which it cannot do. Mark asserts that the ALJ ignored

significant evidence supporting his limitations with reaching and grasping and also argues that

the magistrate judge failed to explain how her RFC findings accommodated his vision

impairments. However, the record indicates otherwise. The ALJ acknowledged that Mark has

no vision in his left eye and discussed the limitations of vision in his right eye, noting that he

7

has 20/20 vision in his right eye with corrective lenses and he testified that he can see "all right" with his right eye when he is wearing his glasses. R. 24, 395-396, 50. The ALJ limited Mark to jobs requiring no more than monocular vision and no required use of a computer monitor for more than two hours per day. The ALJ concluded the following:

> In summary, although the claimant has little or no ability to see with his left eye and has some problems affecting his right eye as well, the totality of the evidence establishes the claimant's functional abilities using his right eye are nevertheless fairly well preserved with correction. The undersigned concludes that the claimant's visual impairments are appropriately accommodated by the above vision-related limitations, along with the reduction of exposure to certain work-related hazards.

R. 24.

The court finds that the magistrate judge correctly concluded that the ALJ determination contained sufficient information to allow meaningful review because the findings included a detailed summary and analysis of Mark's impairments, medical records, testimony, and opinion evidence. In addition, the ALJ explained that she based the vision restrictions in the RFC on the fact that Mark continues to have 20/20 vision in his right eye with corrective lenses. Accordingly, the court finds that the ALJ's determination of the limitations caused by Mark's vision impairments is supported by substantial evidence.

Mark further argues that the ALJ ignored evidence in the record showing that he has problems with balance and difficulty reaching and grasping. However, the ALJ noted that during a consultative examination the doctor indicated that Mark was "unable to perform tandem gait secondary to balance" but could walk on heels and toes, had 5/5 strength bilaterally, and his sensation was intact. Moreover, the ALJ accounted for Mark's difficulties with balance by specifying that he could only work at jobs where he avoided all exposures to

8

dangerous machinery, and that he could never work at unprotected heights, climb ladders, ropes, or scaffolds, or work on vibrating surfaces. In addition, although Mark testified that he has some issues with depth perception and the ALJ acknowledged his testimony, R. 51-52, 22, nothing in the medical record indicates that he had difficulty reaching or grasping. The consultative examiner found that he had no manipulative limitations, R. 387, and no other objective evidence in the record indicates that he had manipulative limitations. The court finds that the magistrate judge correctly concluded that the ALJ properly assessed Mark's issues stemming from his visual impairments.

Mark also asserts that the magistrate judge erred when he found that that ALJ properly considered the effect of his low back impairment on his residual functional capacity. He claims that the ALJ did not make specific findings regarding whether his impairments would cause him to experience episodes of pain or fatigue necessitating breaks or how often the breaks would need to occur, and that she thus failed to comply with SSR 96-8p.

The ALJ found that Mark's alleged low back pain was "severe" based on his complaints of back pain during a consultative examination in December 2017. However, there was no objective clinical indication that he was suffering from a back impairment and with the exception of his inability to perform tandem gait because of a lack of balance, none of the objective tests administered were consistent with a serious back impairment. The ALJ further noted that Mark never complained of back pain in visits with his primary care providers and specifically denied back pain during an emergency room visit. The ALJ concluded that Mark was reasonably subject to some exertional and postural limitations, such as only occasionally

9

climbing ramps and stairs, balancing, kneeling, stooping, and crouching, and never crawling, to avoid exacerbating his back pain, but that further limitations were not warranted. R. 25.

Regarding Mark's need to take breaks, the ALJ noted his testimony that he can sit for up to an hour but can stand for only five minutes at a time and needs to lie down once or twice a day for twenty to thirty minutes to take the pressure off his back. He had seen a chiropractor one time for back pain and took only ibuprofen for pain relief. R. 22. The ALJ found that the alleged intensity and persistence of his pain were inconsistent with his overall history of treatment and the objective medical evidence. R. 25. The ALJ also considered Mark's report of his activities of daily living, including making simple meals, doing laundry, grocery shopping, watching television, visiting with friends, mowing grass on a riding lawn mower, and sweeping with frequent breaks. R. 25. The ALJ concluded that based on Mark's testimony, the objective medical evidence, and his reports of daily activities, the limitations alleged by him in excess of his RFC did not find persuasive support in the record. R. 25.

The court agrees with the magistrate judge that the ALJ decision included the narrative required by SSR 96-8p and contains sufficient information to allow for meaningful review. Accordingly, the court **OVERRULES** Mark's objection to the magistrate judge's finding that the ALJ's assessment of Mark's RFC is supported by substantial evidence.

### B. Subjective Allegations of Impairment

Mark asserts that the magistrate judge erred in concluding that substantial evidence supported the ALJ's conclusions regarding the assessment of his subjective allegations. For the most part, he reiterates his arguments that the magistrate judge and the ALJ ignored evidence in the record documenting his inability to perform tandem gait secondary to balance

issues caused by his loss of vision, that the ALJ failed to perform a function-by-function analysis, and that she failed to make specific findings about his inability to stand for long periods of time, his need to lie down during the day, and his vision issues affecting his depth perception and balance. These arguments were addressed above and will not be revisited here.

Mark also alleges that the ALJ and the magistrate judge failed to address his allegations that his limited vision causes him to frequently trip over objects he cannot see or does not notice. However, the ALJ acknowledged Mark's testimony and that of his mother that he stumbles and trips because of his limited vision. R. 22. The ALJ found that while his report of blindness in his left eye was well-supported, vision in his right eye was 20/20 with correction. The ALJ further found that his vision impairments were accommodated by the vision-related limitations and the reduction of exposure to certain work-related hazards. R. 24.

The magistrate judge found that given that the medical opinion testimony and the records related to Mark's visual impairments failed to establish balance or depth perception issues, the ALJ's conclusion regarding his visual impairments was supported by substantial evidence. The court agrees. There is no indication that Mark reported frequent falls to any health care provider or that he received treatment for injuries related to a fall. The consultative examiner opined that Mark could walk up to eight hours per day and did not need an assistive device to ambulate. R. 387. Mark has pointed to no objective evidence in the record that supports his subjective allegation of frequent falls. For all of these reasons, the court finds that the ALJ adequately addressed Mark's subjective allegation of frequent tripping and falling.

Mark also objects to the magistrate judge's finding that his case is distinguishable from Brown v. Comm'r, 873 F.3d 251 (4th Cir. 2017). In Brown, the Fourth Circuit remanded a

11

case in part because the ALJ listed a claimant's daily activities of cooking, driving, doing laundry, collecting coins, attending church, and shopping in support of the finding that the claimant was not disabled, but did not acknowledge the limited extent of the activities or explain how the activities showed he could sustain a full-time job. See also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)) (observing that it is not enough for an ALJ to state in a conclusory manner that a claimant's testimony regarding limitations placed on his daily activities was unsupported by the medical evidence; rather, an ALJ must articulate "some legitimate reason for his decision" and "build an accurate and logical bridge from the evidence to his conclusion.")

The court agrees with the magistrate judge that Mark's case is distinguishable from Brown. Although the ALJ did discuss Mark's daily activities, she did not rely exclusively on them to find that Mark could sustain a full-time job. Rather, she relied on the medical evidence in the record and the lack of objective medical evidence related to Mark's low back impairment, along with the opinions of the state agency physicians, to find that he can do medium work with additional limitations. The ALJ described his activities of daily living as further supporting the conclusion that Mark could perform a range of medium work. R. 25.

Additionally, in Brown, the Fourth Circuit did not remand the case solely because the ALJ did not explain how Brown's limited activities indicated that he could work an eight-hour workday. Rather, the court found that the ALJ misstated the record regarding the claimant's physical activities and the amount of pain he reported; misstated the effect of injections on the claimant's pain; misstated the claimant's testimony at the ALJ hearing; relied on his own observations and medical judgments in assessing the claimant's pain; and rejected the

consistent opinions of the claimant's treating and examining sources in favor of the opinion of the non-examining state-agency physician. <u>Brown</u>, 873 F.3d at 263-266. None of that contrary evidence is present in Mark's case.

Based on the foregoing, the court finds that the magistrate judge correctly concluded that the ALJ properly considered Mark's subjective allegations and Mark's objection to the finding is **OVERRULED**.

## V. Conclusion

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ decision is supported by substantial evidence. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered:  JANUARY 19, 2021

Michael F. Urbanski
Chief United States District Judge

13